IN RE:

    LICK INDUSTRIES, LLC          CASE NO. 19-51017-TJT
                                                  CHAPTER 11
    Debtor,                              HONORABLE THOMAS J. TUCKER

_____/

## OBJECTION TO CONFIRMATION OF DEBTOR'S THIRD AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT

DAC Retail, LLC, Chondrite Asset Trust, and DAC MAG, LLC ("Creditors"), for its Objection to Confirmation of the Debtor's Third Amended Combined Plan of Reorganization and Disclosure Statement, states as follows:

1. The Debtor filed its Chapter 11 Case on July 30, 2019.

2. Creditors are the holders of a first priority secured interest under a certain promissory note and mortgage executed by the Debtor in real property located at 312 E. University Ave., Royal Oak, MI 48067 ("Collateral").

3. The Collateral is residential property that appraised for over $700,000.00 in 2017. However, due to the Debtor's actions, the Collateral is a (still-valuable) shell of its former self.

4. The Debtor filed its Third Amended Plan of Reorganization and Disclosure Statement (the "Plan") on February 18, 2020.

5. On December 2, 2020, Creditors timely filed a proof of claim with respect to the Collateral in the secured amount of $305,665.04.

6. Thereafter, on January 2, 2020, Creditors filed an election under section 1111(b)(2) of the Bankruptcy Code.

7. The Creditors' section 1111(b) election was withdrawn on March 30, 2020.

8. The Debtor's Plan proposes that Creditors will have an impaired Class 5 claim. It states that the Collateral has a fair market value of $150,000.00, and that the Collateral will be

surrendered to Creditors in "full satisfaction" of their claim. The Plan asserts that Creditors are not entitled to any unsecured deficiency claim by virtue of the section 1111(b) election, which has since been withdrawn

9. This Plan treatment is not proposed in good faith and does not meet the indubitable equivalent, feasibility, absolute priority requirements of the Bankruptcy Code.

10. Section 1129(a) sets out the sixteen requirements that must be met in order for a Chapter 11 bankruptcy plan to be confirmed.

11. Among them is section 1129(a)(3), which mandates that a plan can only be confirmed if it is filed in good faith.

12. Good faith is not defined by the Bankruptcy Code. However, courts have generally said that good faith means that there must be a reasonable likelihood that the plan will achieve a result consistent with the objectives of the Bankruptcy Code. *See, e.g. In re Waterford Hotel, Inc.*, 497 B.R. 255, 266 (Bankr. E.D. Mich. 2013); *In re City of Detroit*, 524 B.R. 147, 248 (Bankr. E.D. Mich. 2014). In determining whether a plan is proposed in good faith, courts consider the "totality of the circumstances," in addition to using the court's own "common sense and judgment." *In re Okoreeh–Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988).

13. Moreover, "[g]ood faith also general requires that the plan be proposed 'with honesty and good intentions, and with a basis for expecting that a reorganization can be effected, and that the plan proponent deal with its creditors in a manner that is fundamentally fair." *In re Oakland Physicians Med. Ctr.*, 2016 WL 424810, at *3 (Bankr. E.D. Mich. 2016) (*quoting In re Gregory Boat Co.*, 144 B.R. 361, 366 (Bankr. E. D. Mich. 1992)).

14. Here, as it relates to Creditors, the Debtor has proposed a "dirt for debt" Plan under which the Collateral is surrendered in full satisfaction of the Creditors' claim of

$305,665.04. However, in addition to the fact that fair market value of the Collateral stated in the Plan of 150,000.00 is not accurate, the Plan fails to treat the Creditor's unsecured deficiency claim. Moreover, the treatment appears to compromise the Creditors' claim against the Debtor's principal Craig Lick under a separate personal guarantee, while allowing Craig Lick to retain his interest in the Debtor under the Plan in violation of the absolute priority rule. For these reasons and those additional reasons cited by the United States Trustee, and considering the totality of circumstances, the Debtor's Plan is *not* proposed in good faith.

15. Next is section 1129(a)(8) requires that each class of claims either accept the Plan or remain unimpaired under the Plan.

16. Where a Plan does not meet the requirement of section 1129(a)(8), section 1129(b)(1) allows the Plan to be confirmed only if the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class.

17. To qualify as fair and equitable under section 1129(b)(1) as to a class of secured claims whose collateral is to be surrendered, the plan is not confirmable unless "[w]ith respect to a class of secured claims, the plan provides--for the realization of such holders of the indubitable equivalent of such claims." 11 U.S.C. § 1129(b)(2)(A)(iii) (emphasis added).

18. Whether a plan provision provides a secured creditor with an indubitable equivalent of its original security depends on: 1) "whether the substitute security completely compensates the creditor; and 2) the likelihood the creditor will receive payment. *In re Wermelskirchen*, 163 B.R. 793, 797 (Bankr. N.D. Ohio 1994) (*citing In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935).

19. The surrender of the Collateral to Creditors in full satisfaction of their claims does not satisfy the indubitable equivalent requirement of the Bankruptcy Code.

20. At minimum, Creditors are entitled to an unsecured deficiency claim for the amount of their claim in excess of the fair market value of the Collateral. *See, e.g. In re Immanuel, LLC*, 2011 WL 938410 (Bankr. W.D. Mich. 2011).

21. The Creditors assert that the current fair market value of the Collateral is $185,000.00 based on an appraisal, and Creditors are aware that interested party Jeffrey Julius has indicated that he would be willing to pay $185,000.00 for the Collateral. However, the Debtor has indicated that it is not interested in selling to him.

22. Moreover, the proposed Plan treatment, if construed as limiting the Creditors' ability to seek a deficiency against guarantor Craig Lick, also does not provide Creditors with the indubitable equivalent of their claim as required by the Bankruptcy Code. *In re Thornebrook Dev. Corp.*, 96 B.R. 350 (Bankr. N.D. Fla. 1989).

23. Additionally, section 1129(a)(11) mandates that a plan can only be confirmed where it is "not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor," which is commonly referred to as feasibility.

24. "The purpose of the feasibility requirement is to protect creditors against unrealistic plans that have little or no chance of success." *In re Cheerview Enterprises, Inc.*, 586 B.R. 881, 902 (Bankr. E.D. Mich. 2018). "A feasibility determination "must be firmly rooted in predictions based on objective fact," showing that "the plan offers a reasonable assurance of success. . . . 'Reasonable assurance of success' requires that the 'plan must provide a realistic and workable framework for reorganization,' rather than 'visionary promises.'" *Id.* (*quoting In re Made in Detroit, Inc.*, 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003)).

25. Here, the Debtor's Monthly Operating Reports show that, despite capital contributions by Craig Lick in the amount of $19,836.74, the Debtor has lost money every month since this case was filed (when security deposits are subtracted out).

26. Moreover, the Plan Projections show that the Debtor will continue to experience large monthly loss even after confirmation.

27. Consequently, the only hope that unsecured creditors have of being paid anything is through either the sale of the 637 S. Connecticut Ave., Royal Oak, MI 48067 *or* the obtaining of alternate financing by Debtor to pay all of the allowed unsecured claims. However, it is entirely *speculative* that this property will be sold or alternative financing be obtained during the period contemplated by the Plan. In fact, after one year, the property will be surrendered to the secured creditor.

28. In other words, the Debtor does not currently have funds to pay unsecured creditors and may never have funds. Therefore the Plan is not feasible.

29. Finally, under the Plan, Class 6 general unsecured creditors are to receive less than 100% of their claims, with the class being impaired.

30. Yet, the Plan provides in Class 7 that the claim of Equity Security Holder Craig Lick remains unimpaired, and Mr. Lick will retain his equity interest.

31. Pursuant to section 1129(b)(2)(B) a plan is fair and equitable with respect to an impaired and dissenting class of unsecured claims only if (1) it pays the class's claims in full, or if (2) it does not allow holders of any junior claims or interests to receive or retain any property under the plan on account of such claims or interests. This is known as the absolute priority rule.

32. The Debtor's Plan violates the absolute priority rule and, therefore cannot be confirmed. *In re Ice House Am., LLC, v. Cardin*, 751 F.3d 734 (6th Cir. 2014).

WHEREFORE, DAC Retail, LLC, Chondrite Asset Trust, and DAC MAG, LLC respectfully request that this Court deny confirmation of the Debtor's Third Amended Combined Plan of Reorganization and Disclosure Statement.

O'REILLY RANCILIO P.C.

*/s/ James J. Sarconi*
JAMES J. SARCONI (P66101)
NATHAN D. PETRUSAK (P75359)
Attorney for DAC Retail, LLC; Chondrite Asset Trust and DAC MAG, LLC
12900 Hall Road, Suite 350
Sterling Heights, MI 48313-1151
(586) 726-1000

DATED: March 30, 2020
jsarconi@orlaw.com